IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) Case No. 4:05-CV-00067 |
| Plaintiff, | ) ) ) **MEMORANDUM OPINION** |
| v. | ) ) |
| ONE STOP CELLULAR, INC., AND KENNETH NEWCOMB, AND AMBER SALZMAN, | ) By: Jackson L. Kiser ) Senior United States District Judge ) ) |
| Defendants. | |

Before me is the *Plaintiff's Motion for Summary Judgment*. For the reasons stated below, I will grant the Plaintiff's Motion.

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, if the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).

## II.     STATEMENT OF FACTS

The essential dispute in this case is whether the Plaintiff, State Farm Fire and Casualty Company ("State Farm"), has a duty to defend and potentially cover Defendants One Stop Cellular ("One Stop") and Kenneth Newcomb ("Newcomb") against a sexual harassment suit filed by Defendant Amber Salzman ("Salzman"). Any such duty would arise under an insurance policy issued by State Farm to One Stop. Consequently, the parties agree that I must employ the "eight corners rule" and look to the "four corners" of both the insurance policy and complaint to determine if coverage exists. *Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co.*, 60 Va. Cir. 418, 423 (2002) (*citing Reisen v. Aetna Life and Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983)). Salzman's complaint alleges that on November 26, 2004, One Stop hired her to act as a manager of a store located in the Chesterfield Towne Center. In January, Newcomb, one of Salzman's supervisors, began to sexually harass her through offensive and unwelcome comments, instant text messages to Salzman's cellular phone, jokes, insults, and unwelcome flirtations. Among other particular allegations, Salzman claims that Newcomb asked her to meet him in a closed amusement park, asked her to allow him to accompany her on an overnight trip, and sent her thirty nine lewd text messages in one day.

In September of 2005, Salzman brought suit in the Chesterfield County Circuit Court against One Stop and Newcomb. Her Amended Motion for Judgment, filed in December, stated claims of assault, intentional infliction of emotional distress, and stalking and willful and wanton conduct or negligence against Newcomb and One Stop. She also alleged that One Stop negligently retained Newcomb.

-2-

One Stop had coverage under three different insurance policies issued by State Farm. Business Policy I covered One Stop from April 21, 2004 until April 21, 2005. Business Policy II, issued by State Farm on April 21, 2005, provided coverage until April 21, 2006. On November 4, 2004, State Farm issued an Umbrella Policy which covered One Stop until November 4, 2005. All three policies state that One Stop has a right and a duty to defend any claim or suit seeking damages payable under the respective policy.

### III. PROCEDURAL BACKGROUND

State Farm filed a *Complaint for Declaratory Judgment* on November 21, 2005, which State Farm amended on June 13, 2006. As amended, the Complaint sought a ruling that State Farm owed "no duties or obligations" under the insurance contracts to defend or indemnify State Farm or Newcomb "for the matters alleged in the Amended Motion for Judgment" or to make payments to Salzman. On June 26, 2006, State Farm moved for summary judgment. The Court received briefs from both parties on State Farm's motion and heard arguments on August 8, 2006, making the issue ripe for decision.

### IV. DISCUSSION

Because this is a diversity action, the parties agree that Virginia law applies to this case. Under the policies, State Farm owed One Stop "a duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent." Under Virginia law, when an insurance contract creates such an obligation, the insurer will owe the insured a duty to defend if the conduct alleged in the underlying law suit falls within the scope of the coverage provided by the policy. *Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978). The insurer does not owe a duty "when

-3-

it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen*, 225 Va. at 331, 302 S.E.2d at 531. In such cases, "an insurer's obligation to defend is broader than its obligation to pay." *Lerner v. Gen. Ins. Co. of America*, 219 Va 101, 104, 245 S.E.2d 249, 251 (1978). Consequently, if State Farm owes One Stop and Newcomb no duty to defend, then State Farm will have no obligation to indemnify either defendant.

All three policies state that State Farm will pay One Stop "those sums that the insured becomes legally obligated to pay as damages because of bodily injury." One Stop argues that the claims asserted by Salzman in her state court Motion for Judgment fall within the "bodily injury" coverage of the policies. State Farm denies that the Salzman claims fall within the coverage and asserts that even if they do, they are excluded by Exclusion Five of each of the policies.[1]

Exclusion Five of Business Policy I and the Umbrella Policy provides that those policies will not apply "to bodily injury to an employee of the insured arising out of and in the course of their [sic] employment by the insured." Exclusion Five of Business Policy II excludes coverage for bodily injury

    a.    to an employee of the insured arising out of and in the course of employment, or the termination of employment, by the insured . . .
    b.    arising out of any:
        (1)    refusal to employee;
        (2)    termination of employment:
        (3)    coercion, demotion, evaluation, reassignment, discipline,

---

[1] Because I find the that exclusions apply, I will not address the issue of whether the insuring provisions cover the injuries alleged by Salzman.

-4-

defamation, harrassment [sic], humiliation, discrimination or other employment-related practices, policies, acts or omissions . . .

I find that none of the three policies provides coverage for this case. Although worded slightly differently, each Policy's Exclusion Five precludes coverage for claims for bodily injury to any "employee of the insured arising out of and in the course of" his or her employment. Salzman's complaint clearly states that she was an employee of One Stop and acting in that capacity when nearly all of the alleged incidents took place.[2] Thus, the policies cannot provide coverage in the underlying law suit.

The Fourth Circuit has reached the same conclusion on similar facts. *Gates, Hudson & Assocs., Inc. v. The Fed. Ins. Co.*, 141 F.3d 500, 501-03 (4th Cir. 1998). In *Gates, Hudson & Associates*, the plaintiff sued its insurer and sought a declaratory judgment that the insurer had an obligation to defend or indemnify a claim brought against the plaintiff by a former employee for sexual harassment and discrimination. *Id.* at 501-02. The insurance policy specifically excluded coverage for "any liability of [GHA] arising out of *injury* of an employee in the course of employment." *Id*. at 501 (alteration in original). The district court granted the insurer's motion for summary judgment, and the Fourth Circuit affirmed. *Id*. at 502-503.

To be sure, the primary issue in *Gates, Hudson & Associates* was whether the term "injury" in the exclusion was ambiguous. *Id*. Nonetheless, a necessary element of the holding was that an exclusion in an insurance contract, very similar to the one in this case, could negate coverage for claims of sexual harassment arising from conduct endured by the victim while at

---

[2]Although Salzman claimed that some of the harassment occurred through phone calls while she was at home and at a restaurant, One Stop does not argue that these isolated instances trigger State Farm's duty to defend.

-5-

work. Indeed, other courts have cited *Gates, Hudson & Associates* for this very proposition. *See State Farm Fire & Cas. Co. v. Singh*, No. 3:05CV834, 2006 WL 1520516, at *5 (E.D. Va. May 25, 2006) (noting that *Gates, Hudson & Associates* "held that a similar exclusion denied coverage in a workplace employee sexual harassment and wrongful termination context"); *Smith v. Animal Urgent Care, Inc.*, 208 W. Va. 664, 671, 542 S.E.2d 827, 834 (2000) (noting that *Gates, Hudson & Associates* ruled that "sexual harassment claim was an injury that fell within employee exclusion language of commercial excess umbrella policy").

Numerous other courts have found similar exclusions precluded coverage for an employee's sexual harassment claims. *See, e.g., Singh*, 2006 WL 1520516, at *2, *5 (holding that an exclusion that denied coverage for claims by employees "arising out of and in the course of their employment by the insured" excluded coverage for employee's sexual assault claim); *Trucks Ins. Exch v. Gagnon*, 131 N.M. 151, 153-56, 33 P.3d 901, 903-06 (2001) (concluding that sexual harassment arose out of employment and was consequently excluded by a similar provision to the one at issue in this case); *Smith*, 208 W. Va. at 671-73, 542 S.E.2d at 834-36 (finding "that an 'employee' exclusion, which exempts coverage under a liability policy for 'bodily injury' arising in the course of employment, includes claims for sexual harassment by a co-employee since those claims 'arise out of and in the course of employment' " and listing cases that reach a similar result).

Nonetheless, One Stop maintains that Exclusion Five does not exclude coverage for this claim. The language in Exclusion Five is identical to the language in the Virginia Worker's Compensation Statute. VA. CODE ANN. § 65.2-300 (2002) (covering claims "arising out of and in the course of the employment"). Thus, One Stop asserts that the parties intended that the

-6-

language be interpreted in the same manner as the Workers' Compensation Statute. Virginia courts have interpreted the Workers' Compensation Statute to exclude claims for sexual assault. *E.g.*, *Reamer v. Nat'l Service Indus.*, 237 Va. 466, 471, 377 S.E.2d 627, 630 (1989); *Richmond v. Braxton*, 230 Va. 161, 164-65, 335 S.E.2d 259, 261-62 (1985). Therefore, One Stop asserts that because Virginia Courts have concluded that sexual assault does not occur "out of and in the course of" employment under the Workers' Compensation Statute, I should find that the identical language in the insurance policies does not extend to Salzman's claims for sexual assault and harassment. If I adopted that reading of the phrase "out of and in the course of" employment, Salzman's claims would not be subject to Exclusion Five because that section would not exclude claims for sexual assault or harassment.

The Supreme Court of Virginia has twice held that insurance contracts should not be interpreted by referencing the Worker's Compensation Statute. In *Virginia Electric and Power Co. v. Northbrook Property and Casualty Ins. Co.*, 252 Va. 265, 475 S.E.2d 264 (1996), a delivery person, employed by a different company than the insured, suffered an injury while making a delivery on the insured's premises. The insurer refused to defend the case on the grounds that the insurance policy contained an exclusion for injuries suffered by employees. The insurance company maintained that because the delivery person would have been considered an employee of the insured under the Worker's Compensation Act, she was also an employee for purposes of applying the exclusion. The trial court noted the similarity between the language in the policy and the language in the act and decided that the insurer properly refused to defend. *Id*. at 267-68, 475 S.E.2 at 265. The Supreme Court of Virginia reversed and concluded that statutory definitions from the Workers' Compensation Act should not be applied to terms in an

-7-

insurance contract "unless the policy provides by reference to the specific statute that the statutory definition is intended to be applied." *Id.* at 270-71, 475 S.E.2d at 267. Likewise, in *American Reliance Insurance Co. v. Mitchell*, 238 Va. 543, 548, 385 S.E.2d 583, 586 (1989) the Court declined "to embark on a worker's compensation analysis" to determine if an injured party was a "farm employee" of the insured but instead gave the words in an insurance contract their plain meaning absent a specific reference to the statute in the contract.

Therefore, Virginia Courts interpret insurance contracts according to their plain meaning, not by referencing the Worker's Compensation Act. As a result, the Supreme Court of Virginia's previous interpretation of the phrase "out of and in the course of" employment in the context of a worker's compensation case has no bearing on interpreting those terms in an insurance contract. Other jurisdictions have also declined to interpret an insurance contract by referencing workers' compensation laws. *Gagnon*, 131 N.M. at 155, 33 P.3d at 905; *Smith*, 208 W.Va at 672, 542 S.E.2d at 835.

Next, One Stop claims that I should find that the phrase "out of and in the course of" employment only bars coverage for worker's compensation claims because that is the only way to give Paragraph "b" of Exclusion 5 in Business Policy II any meaning. "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *City of Chesapeake v. State Self-Insurers Risk Retention Group, Inc.*, 271 Va. 574, 578, 628 S.E.2d 539, 541 (2006) (internal quotations omitted). One Stop argues that State Farm knew Paragraph "a" of Exclusion Five in Business Policy II only excluded matters covered under the Worker's Compensation Act and therefore included Paragraph "b" to exclude "matters beyond the scope of the Worker's

Compensation laws, including 'other employment related practices' like 'harassment.' " If Paragraph "a" excluded coverage for claims like harassment, according to One Stop, then Paragraph "b" would have no function, violating the above rule of construction.  Therefore, in order to give Paragraph "b" meaning, One Stop claims that the phrase in question must only exclude claims covered by workers' compensation.  In that event, Exclusion 5 of Business Policy I and the Commercial Umbrella Policy would not exclude Salzman's claims.

While courts should interpret contracts to give effect to each provision when possible, Paragraph "b" does have a function independent of Paragraph "a" in Exclusion 5 of Business Policy II under State Farm's interpretation of the policy.  Because Paragraph "b" denies coverage for a claim arising from any "refusal to employ," it may exclude claims brought by people who are not employees of One Stop.  Thus, it precludes some claims that will not be excluded by Paragraph "a," which only effects claims brought by employees.  Clearly, Paragraph "b" is not functionless under State Farm's interpretation.

Last, One Stop contends that the language at issue in the insurance contract is "reasonably susceptible" to One Stop's interpretation and is therefore, at the very least, ambiguous.  *Hill v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 148, 153, 375 S.E.2d 727, 730 (1989) ("A term is ambiguous if it is susceptible of two or more meanings.").  As a result, One Stop would have the Court construe the language in question against State Farm.  *Johnson v. Ins. Co. of North America*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986) ("[L]anguage in an insurance policy purporting to exclude coverage for certain events will be construed most strongly against the insurer.").

One Stop's argument assumes that the language is indeed susceptible to the proposed

-9-

meaning.  As discussed above, One Stop reads the language at issue in light of the Worker's Compensation Statute.  However, the Supreme Court of Virginia has stated that the meaning ascribed to the language used in those statutes should not be ascribed to similar language in insurance contracts, absent a clear statement in the contract referencing the statute.   *VEPCO*, 252 Va. at 270-71, 475 S.E.2d at 267; *Mitchell*, 238 Va. at 548, 385 S.E.2d at 586.  Therefore, I will find that the statute is not susceptible to One Stop's argument, is not ambiguous, and should not be interpreted against State Farm.

## V.    CONCLUSION

Based upon the above rationale, I will grant the *Plaintiff's Motion for Summary Judgment*.

The Clerk of the Court is hereby directed to send a certified copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.  The Clerk will be further directed to strike this case from the active docket of this Court.

Entered this 6th day of September, 2006.

                                                 s/Jackson L. Kiser
                                                 Senior United States District Judge